J. Calvit, Tutor, &c., *v.* Mulhollan & Carnal.

An action will not lie against third parties in possession of lands derived by regular conveyance from plaintiff's ancestor, without first impeaching, by direct action, the conveyance made by such ancestor.

A PPEAL from the District Court of the parish of Rapides, *Chaplin*, J.
A. N. *Ogden, jr.*, for plaintiffs and appellees.  *Elgee*, for defendants and appellants.

Merrick, C. J.  *James Brewster* died in July, 1821, leaving the tract of land in controversy in this case, as a part of his separate estate, and seven children his heirs at law.  Two of these children, *Hazard* and *Elizabeth Brewster*, died without issue in the year 1822, and *Nancy Long*, another, the wife of *William Long*, died in the year 1823 or 1824, also without issue.

On the 24th day of January, 1824, (whether before or after the death of *Nancy Long*, does not appear,) by act under private signature duly recorded, *Martha Calvit*, one of the children of *James Brewster*, and the mother of the plaintiff, assisted by her husband, *Isaac Calvit*, acknowledged to have received her portion of *James Brewster's* estate—" being all claim on either real or personal property in the following articles, viz: one negro girl named *Judy*, stock of cattle, fifty head more or less in numbers as may be found, one mare named Durkis and her colt;" and, in consideration thereof, they granted a discharge in full to *Smith W. Brewster*, the executor of the said estate.

On the 17th day of October of the same year, 1824, *James Brewster*, *Madison Brewster* and *Martha Calvit* assisted by her husband, by act under private signature recorded in the parish Judge's office, "relinquished, assigned and set over" to *William Long* the husband of *Nancy Long*, deceased, all their right, claim and pretensions to the property of his, then late wife, *Nancy Long*, deceased.  No consideration is expressed as having passed from said *William Long*.

*William Long* appears to have considered himself as invested with his deceased wife's interest in the succession of her father, and on the fifth day of September, 1826, *Smith W. Brewster*, *James Brewster* and *William Long*, claiming to hold three-fourths of the inheritance of *James Brewster*, deceased, by inheritance and purchase, sold, by notarial act, duly recorded, to *Carter Beamau* three-fourths of the tract of land in controversy.  The defendants claim under this deed and a subsequent conveyance of the remaining one-fourth, the interest of *Madison Brewster* ; said *Smith W.*, *James*, *Madison* and *Martha*, who had executed said acts under private signature, being the only surviving children of said *James Brewster*, deceased.

*Martha Calvit* was a minor, emancipated by marriage, when she signed the acts under private signature.  She was of the age of majority on the 3d day of May, 1827, and was consequently a major for nearly nine years before her death Whether she was in possession of or had sold or disposed of the property which she acquired under the act of 24th January, 1824, during that period, the record does not inform us.

The Judge of the lower court was of the opinion that the last mentioned act was binding upon the plaintiffs notwithstanding the minority of their mother,

86

CALVIT
v.
MULHOLLAN.

and as to the estates of *Hazard, Elizabeth* and *Nancy,* that prescription had run against them as vacant successions. The defendants did not introduce any proof to show that as to these estates no inventory or other mortuary proceedings were had, but left the court to infer that they were vacant for want of proof on the subject. See *McCollogh* v. *Minor,* 2 An., 466.

Without expressing any opinion on the merits of the plea, which case we leave entirely open, we think that so long as the act of 24th of January, 1824, remains unrescinded or not annulled, the plaintiffs are precluded from instituting an action against third parties who hold under it. The plaintiffs should have brought their direct action against the parties to that instrument as well as those who hold under to annul it, and then if it appeared that they were in a condition to return the slave *Judy* and her increase, and the other property their mother acquired under said instrument, and it should not be adversely shown that after her majority the said *Martha Calvit,* either expressly or tacitly, ratified said proceeding, the plaintiff may be entitled to relief unless barred by prescription. 10 L. R. 269; 9 L. R. 305; 1 An. 38; 11 M. 443, and 2 An. 466.

We have already observed that, it does not appear that *Nancy Long* was dead at the period of said act. We think that the judgment of the court ought not to operate as an absolute bar to further proceedings on the part of the plaintiff.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and now proceeding to pronounce such judgment as ought to have been rendered by the lower court, it is ordered, adjudged and decreed by the court that there be judgment against the plaintiff's demand and in favor of the defendant, as in case of a non-suit; and it is further ordered, that the defendants and appellees pay the costs of the appeal, and the plaintiff pay the costs of the lower court.